IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DEBRA K. MORTON, ) | CASE NO. 1:07 CV 396 |
| ) | |
| Plaintiff, ) | MAGISTRATE JUDGE |
| ) | WILLIAM H. BAUGHMAN, JR. |
| v. ) | |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | **MEMORANDUM OPINION AND** |
| ) | **ORDER** |
| Defendant. ) | |

### Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Debra K. Morton, for disability insurance benefits and supplemental security income. The parties have consented to magistrate judge's jurisdiction.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Morton had severe impairments consisting of artherosclerotic heart disease with residuals of myocardial infarction, vertebraegenic disorder of the lumbar spine, bilateral carpal tunnel syndrome, and obesity.[1] The ALJ made the following finding regarding Morton's residual functional capacity:

> [T]he claimant has the residual functional capacity to: lift up to 10 pounds; standing and walking are limited by the option to alternate between sitting and standing as needed; and she must avoid climbing ropes/ladders/scaffolds,

---

[1] Transcript ("Tr.") at 37.

    repetitive use of foot controls on the left, more than occasional postural activities (bending, squatting, stooping, kneeling, crouching or crawling), more than frequent fine manipulation and exposure to hazards or vibrations.[2]

The ALJ determined at the above-quoted residual functional capacity precluded Morton from performing her past relevant work.[3]

    Based on an answer to a hypothetical question posed to the vocational expert at the hearing incorporating the above-quoted residual functional capacity, the ALJ decided that a significant number of jobs existed regionally and nationally that Morton could perform.[4] He, therefore, found Morton not under a disability.[5]

    Morton asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record.  Specifically, she complains that the ALJ failed to include additional limitations in the residual functional capacity finding to compensate for her cardiac condition and for difficulties with gross manipulation (handling).

    I conclude that substantial evidence supports the ALJ's residual functional capacity finding and the finding at step five that a significant number of jobs existed regionally and nationally that Morton could perform.  Accordingly, the decision of the Commissioner must be affirmed.

---

    [2] *Id.* at 39-40.

    [3] *Id.* at 42.

    [4] *Id.*

    [5] *Id.*

**Analysis**

**1.     Standard of review**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[6]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[7] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[8]

---

[6] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[7] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[8] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.     The assessment of Morton's cardiac condition**

As argued in Morton's brief,[9] the thrust of the challenge regarding her cardiac condition centered on the ALJ's assessment of the opinion of her treating physician, Mark Goggin, M.D.  The Appeals Council remanded the first ALJ's decision in this case with directions to "adequately address" Dr. Goggin's medical opinions.[10]  On remand, the ALJ discussed Dr. Goggin's opinions and concluded that they did not provide "substantial evidence or objective findings to support his assessment of less than full-time, sedentary work."[11]

At the oral argument in this case, however, counsel for Morton abandoned reliance on Dr. Goggin's opinions because the restrictions he imposed were for a period of only nine to eleven months.[12]  Rather, he stated his intention to hang his hat on the assessment of Talal T. Attar, M.D., a cardiologist.[13]   Specifically, counsel pointed to a cardiac

---

[9] ECF # 12 at 12-16.

[10] Tr. at 581-82.

[11] *Id.* at 40.

[12] Transcript of the oral argument of April 2, 2008 ("4/2/08 Tr.") at 11.  *See*, Tr. at 1438.

[13] 4/2/08 Tr. at 11.

catheterization report prepared by Dr. Attar in October of 2004.[14]  This report is not a residual functional capacity assessment in the traditional sense.  It contains in the diagnosis portion, however, a reference to "NYHA [New York Heart Association] or Canadian FC [Functional Capacity] 4 (symptomatic at rest or any activity)."  According to Morton's counsel, by looking up the New York Heart Association classification of functional capacity on the internet, Class IV provides as follows:  "Patients with cardiac disease resulting in inability to carry out any physical activity without discomfort.  Symptoms of heart failure or the anginal syndrome may be present even at rest.  If any physical activity is undertaken, discomfort increases."[15]

From my review of the record, I can find no instance in which this reference in Dr. Attar's report, which can only be explained by sources outside the record, was ever brought to the attention of either the ALJ or the Appeals Council.[16]  Furthermore, in report letters written by Dr. Attar to Dr. Goggin, Dr. Attar describes Morton as doing well.[17]  This correspondence, taken as a whole, does not suggest an ongoing condition of the severity of the New York Heart Association classification referred to in the catheterization report.

---

[14] Tr. at 1372-73, discussed at 4/2/08 Tr. at 13-14, 29-31.

[15] Am. Heart Assn., http://www.americanheart.org/presenter.jhtml?identifier=4569 (last visited September 22, 2009).  *See*, 4/2/08 Tr. at 30.

[16] *See*, *e.g.*, Tr. at 29, 1613.

[17] Tr. at 1473, 1476, and 1479.

Finally, the record contains the report of a functional capacity evaluation done in the spring of 2006 and a letter to Dr. Goggin from Scott Otis, M.D., a physical medicine and rehabilitation specialist, prepared in the same time frame.[18] Although the emphasis of the evaluation and Dr. Otis's report is Morton's back problem, it appears from the activity undertaken as part of the assessment that Morton had the capability for physical activity inconsistent with the NYHA classification referred to in Dr. Attar's report. Accordingly, substantial evidence supports the limitation to sedentary activity included in the residual functional capacity finding.

### 3. The limitation on Morton's ability for gross manipulation

Morton suffered from bilateral carpal tunnel syndrome. In April of 2004, she had a left carpal tunnel release.[19] In December of 2005, she had left cupital ulnar nerve surgery.[20] On January 31, 2006, Morton underwent a right carpal tunnel release.[21]

Several days after the cupital ulnar nerve surgery on the left arm, Morton underwent a comprehensive consultative medical examination performed by a neurologist, Robert Thompson, M.D.[22] With respect to her left arm, he observed "examination of the left upper extremity reveals a recent incision over the left cupital tunnel region. She still has some post

---

[18] *Id.* at 1588-98.

[19] *Id.* at 1170.

[20] *Id.* at 1574.

[21] *Id.* at 1573-74.

[22] *Id.* at 1303-12.

incisional pain with some decreased grip in that hand as a result."[23] He concluded "[b]ased on these objective findings, Ms. Morton would be unable to do any job that required repetitive lifting or bending. She would be unable to do any forceful, repetitive work with her upper extremities.[24] In his specific objective findings, Dr. Thompson reported that Morton had normal grasp, manipulation, pinch, and fine coordination in the right hand but abnormal functioning in the left hand.[25] He noted that his testing on the left arm was unreliable because of the recent surgery.[26]

In his medical assessment of ability to do work-related activities, he rated Morton's limitations in handling (gross manipulation) and fingering (fine manipulation) as occasional.[27] In an addendum to that assessment, he limited Morton's ability for handling and fingering with both hands to occasional.[28]

Based on this assessment, Morton argues that the limiting of her ability for gross manipulation (handling) to occasional rendered her disabled. She bases this argument on the testimony of the vocational expert. The vocational expert testified that, with gross

---

[23] *Id.* at 1504.

[24] *Id.* at 1505.

[25] *Id.* at 1506.

[26] *Id.*

[27] *Id.* at 1511.

[28] *Id.* at 1513.

manipulation limited to occasional, then the jobs identified in response to the ALJ's hypothetical would not exist.[29]

The ALJ in the residual functional capacity finding placed no limitation on gross manipulation and a limitation on fine manipulation to no more than frequent.[30] He decided that Dr. Thompson's limitations on gross and fine manipulation of both hands to occasional was not warranted given that the right hand tested normal for fine coordination, pinch, manipulation, and grasp and that the left hand could not be tested because of the recent surgery.[31]

As described above, Dr. Thompson's assessment occurred immediately after Morton had left cupital ulnar nerve surgery and immediately before she underwent the right carpal tunnel release. It represents, therefore, a snapshot of Morton's abilities at the time. The transcript contains no medical records regarding Morton's carpal tunnel impairment or any limitations imposed thereby following the right carpal tunnel release.

In the spring of 2006, Morton underwent a physical capacity evaluation, primarily with respect to her back condition.[32] The therapist's observations as part of this evaluation include a notation of "above average hand coordination testing bilaterally with fine and

---

[29] *Id.* at 164-65.

[30] *Id.* at 39-40.

[31] *Id.* at 41.

[32] *Id.* at 1588-92.

gross motor activities...."[33] She was tested for her right and left hand grip[34] and rated with above average hand coordination in both her right and left extremities.[35]

There exits, therefore, no evidence that the limitations noted by Dr. Thompson in his one-time evaluation between her two surgeries persisted for the 12-month period required for disability. Morton has the burden of proof to show that her limitations persisted for the 12 months necessary to meet the durational requirement of the Social Security Act.[36]

## Conclusion

Substantial evidence supports the finding of the Commissioner that Morton had no disability. Accordingly, the decision of the Commissioner denying Morton disability insurance benefits and supplemental security income is affirmed.

IT IS SO ORDERED.

Dated: September 23, 2009      s/ William H. Baughman, Jr.
    United States Magistrate Judge

---

[33] *Id.* at 1589.

[34] *Id.* at 1591.

[35] *Id.*

[36] *Barnhart v. Walton*, 535 U.S. 212, 222-23 (2002); *Jacobs v. Sec'y of Health & Human Servs.*, 836 F.2d 1348, 1987 WL 27507, at *2 (6th Cir. 1987) (unreported table decision).